ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN OPEN COURT
U.S.D.C. - Atlanta

JUL 29 2020

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

UNITED STATES OF AMERICA

*v.*

ANTONIO BROWN

Criminal Indictment

No.

**1:20 CR 288**

THE GRAND JURY CHARGES THAT:

**Counts One Through Three**
*Mail Fraud*
(18 U.S.C. § 1341)

1.  Beginning in or about 2012, and continuing through in or about April 2016, the exact dates unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendant, ANTONIO BROWN, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were false and fraudulent when made and caused to be made and that said omissions were and would be material.

**Manner and Means**

2.  Throughout the scheme to defraud, the defendant, ANTONIO BROWN, incurred thousands of dollars' worth of credit card charges and took out over $60,000 in automobile loans to finance the purchases of a Mercedes and Range Rover.  He then repeatedly falsely claimed to credit bureaus, banks, and credit

card companies that he had not incurred those credit card charges and had not sought those automobile loans.

### Brown's Bank of America Credit Card Expenditures

3.   In April and May 2012, BROWN applied for two Bank of America credit cards, which he then used to make thousands of dollars' worth of purchases for his personal benefit.  For example:

- On or about May 29, 2012, BROWN used Bank of America credit card ending in 7290 to make a $249.60 payment to American Airlines for a flight to Atlanta for himself.

- On or about July 2, 2012, BROWN used his Bank of America credit card ending in 2211 to make a $299.60 payment to American Airlines for a flight to Miami for himself.

- On or about July 3, 2012, BROWN used his Bank of America credit card ending in 2211 to make a $297.60 payment to Orbitz for an American Airlines flight to Miami for himself.

4.   BROWN also used his Bank of America checking account to pay down the Bank of America credit card balances.  For example:

- On or about May 9, 2012, BROWN made a $1,400.00 payment towards the balance on his Bank of America credit card ending in 7290.

- On or about May 22, 2012, BROWN made a $1,500.00 payment towards the balance on his Bank of America credit card ending in 7290.

- On or about July 12, 2012, BROWN made a $500.00 payment towards the balance on his Bank of America credit card ending in 2211.

### Brown's Bank of America Automobile Loans

5.   In May 2012, BROWN secured a loan in the amount of $24,742.22 to finance the purchase of a 2008 Mercedes C300.

6. In June 2012, BROWN secured a loan in the amount of $37,748.10 to finance the purchase of a 2008 Range Rover.

7. BROWN knowingly submitted both automobile loan applications to Bank of America, and used the loan proceeds to obtain both automobiles. He sent and received emails throughout 2012 about both automobiles. For example, on or about August 23, 2012, BROWN received an email from State Farm regarding his insurance policy for the 2008 Range Rover. Then, on October 23, 2012, BROWN sent an email stating, in part, "I do have another vehicle (2008 Land Rover Range Rover) under Geico that is a financed loan through Bank of America .... "

### Brown's Chase Credit Card Expenditures

8. In May 2012, BROWN applied for a Chase credit card, which he then used to make thousands of dollars' worth of purchases.

9. The Chase credit card application listed BROWN's New York City apartment as the mailing address. Furthermore, BROWN used this credit card for his personal benefit, which included making a $10,000 payment to a Square account (a mobile payment service) held in his name in June 2012.

### Brown's American Express Credit Card

10. In 2012, BROWN applied for an American Express credit card, which he then used to make thousands of dollars' worth of purchases for his personal benefit. For example:

- On or about August 31, 2012, BROWN made a $50.95 payment to Enterprise for a car rented under his name.

- On or about September 4, 2012, BROWN made a $367.60 payment to Virgin America for a flight to Los Angeles for himself.

3

- On or about September 11, 2012, BROWN made a $238.10 payment to Delta Airlines for a flight to Houston for his brother.

11. Furthermore, BROWN used his Bank of America checking account to pay down his American Express credit card balance: For example:

- On or about August 29, 2012, BROWN made a $2,600.00 payment towards his outstanding American Express balance.

- On or about September 16, 2012, BROWN made a $6,000.00 payment towards his outstanding American Express balance.

- On or about September 16, 2012, BROWN made a $1,000.00 payment towards his outstanding American Express balance.

### *Brown's Repeated False Statements*

12. Despite the fact that he personally benefited from the aforementioned financial transactions, BROWN would later repeatedly falsely claim to credit bureaus, banks, and credit card companies that someone had unlawfully used his identity to obtain the aforementioned automobile loans and credit cards.

13. On or about December 19, 2013, BROWN electronically submitted a claim to a credit agency that someone had opened a number of accounts using his personal information. Specifically, BROWN claimed that an unknown individual had fraudulently used his information to open, among others, the aforementioned Bank of America accounts, Chase Bank account, and American Express account.

14. In March 2016, BROWN caused his attorney to send a letter to Bank of America and Chase Bank again claiming that someone had fraudulently used his information to open the aforementioned Bank of America, Chase Bank, and American Express accounts.

15. In April 2016, BROWN submitted a written claim to credit agencies, Bank of America, and American Express that his identity had been used without his permission. BROWN's submission stated, in part:

> I recently pulled my credit report from Experian, Equifax, and Trans Union and to my amazement, saw that you have been reporting a fraudulently opened account within my credit reports. I have previously disputed this account with the credit reporting agencies, which have advised me to continue the dispute process with you, the company that has placed this fraudulently opened account within my credit file.
>
> Let me very clear, I did not open this account, so how dare you verify with the credit reporting agencies that this account belongs to me. I did not open this account and that means that you are reporting an account that does not belong to me, which is a violation of the Fair Credit Reporting Act.

16. BROWN's April letter further stated, "[t]o avoid a lawsuit, I request that you DELETE the account from my credit report. Though I am entitled to $3,000, $1,000 for each violation (one for each inaccurate account for each credit bureau), I will take $1000. Please correct this, and remove this fraudulent account or I will be forced to seek legal action against your company."

17. In reality, BROWN knew that he had in fact opened the aforementioned credit cards, incurred the charges on those credit cards, and obtained the aforementioned automobile loans.

### Execution of the Mail Fraud Scheme

18. On or about the dates listed below for each count, in the Northern District of Georgia and elsewhere, the defendant, ANTONIO BROWN, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent

pretenses, representations, promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were false and fraudulent when made and caused to be made and that said omissions were and would be material, knowingly caused the following materials to be sent by mail and by private and commercial interstate carrier:

| Count | Date | Mailing |
|-------|------|---------|
| 1 | April 18, 2016 | Mailing of a packet of materials to Bank of America that falsely alleged BROWN's identity had been used without his permission to open multiple accounts. |
| 2 | April 18, 2016 | Mailing of a packet of materials to Chase Bank that falsely alleged BROWN's identity had been used without his permission to open multiple accounts. |
| 3 | April 18, 2016 | Mailing of a packet of materials to Equifax Information Services that falsely alleged BROWN's identity had been used without his permission to open multiple accounts. |

All in violation of Title 18, United States Code, Section 1341.

## Counts Four Through Five
*Wire Fraud*
(18 U.S.C. §§ 1343 and 1349)

19. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 18 of this Indictment as if fully set forth herein.

### Manner and Means

20. Beginning in or about 2012, and continuing through in or about April 2016, the exact dates unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendant, ANTONIO BROWN, knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money by

6

means of materially false and fraudulent pretenses, representations, promises, and by omission of material facts, well knowing and having reason to know that said pretenses, representations, and promises were false and fraudulent when made and caused to be made and that said omissions were and would be material.

<u>Execution of the Wire Fraud Scheme</u>

21. On or about the dates listed below for each count, in the Northern District of Georgia and elsewhere, the defendant, ANTONIO BROWN, for the purpose of executing and attempting to execute the aforementioned scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, did, with intent to defraud, cause to be transmitted by means of a wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, namely, the following electronic transactions identified below:

| Count | Date | Electronic Wire in Interstate Commerce |
|-------|------|----------------------------------------|
| 4 | March 9, 2016 | BROWN caused his attorney to fax materials to Transunion falsely alleging that BROWN's identity had been used without his permission to open multiple accounts. |
| 5 | March 18, 2016 | BROWN caused his attorney to fax materials to Experian falsely alleging that BROWN's identity had been used without his permission to open multiple accounts. |

All in violation of Title 18, United States Code, Sections 1343 and 1349.

**Count 6**
*Bank Fraud*
(18 U.S.C. § 1344)

22. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 21 of this Indictment as if fully set forth herein.

23. Beginning on or about August 1, 2017, and continuing until on or about August 31, 2017, the exact dates unknown to the Grand Jury, in the Northern District of Georgia, the defendant, ANTONIO BROWN, knowingly executed and attempted to execute a scheme and artifice to defraud Signature Bank, a financial institution whose deposits were then insured by the Federal Deposit Insurance Corporation (FDIC), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by material omissions, certain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Signature Bank.

<u>**Manner and Means**</u>

24. As part of the scheme to defraud, BROWN sent a loan application to Signature Bank containing materially false information about his income and assets in an effort to secure a $75,000 loan under false pretenses.

25. Specifically, on August 24, 2017, BROWN electronically submitted an application to Signature Bank for a $75,000 loan on behalf of BROWN's company, LVL XIII Brands (known as Level 13). In the loan application, BROWN falsely claimed that he earned $325,000 per year and had $200,000 in available cash/assets.

26. In fact and in truth, other documents signed by BROWN during that time period revealed that he actually earned far less than $325,000 per year and had

far less than $200,000 in available cash/assets than he represented to Signature Bank.  For instance, in a July 2017 loan application to another bank, BROWN submitted a 2016 federal income tax return reporting that he earned $125,000 per year (which was $200,000 less than what he represented that his income was to Signature Bank). Also, in an August 2017 loan application to yet another bank, BROWN claimed he had an annual salary of $175,000 (which was $150,000 less than what he told Signature Bank), and only had $25,000 in available cash/assets (which was $175,000 less than what he told Signature Bank).

### Execution of the Bank Fraud Scheme

27. On or about August 24, 2017, in the Northern District of Georgia, the defendant, ANTONIO BROWN, knowingly executed and attempted to execute the above-described scheme to defraud by submitting materially false information to Signature Bank regarding his salary and available cash/assets to obtain a $75,000 loan from Signature Bank.

All in violation of Title 18, United States Code, Section 1344.

**Count 7**
*False Statements on Loan Application*
(18 U.S.C. § 1014)

28. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 27 of this Indictment as if fully set forth herein.

29. On or about August 24, 2017, in the Northern District of Georgia, the defendant, ANTONIO BROWN, knowingly made a false statement for the purpose of influencing the action of Signature Bank (an insured depository institution as defined by the Federal Deposit Insurance Act), in connection with a

loan, in that -- BROWN submitted a personal financial statement to Signature Bank that contained false and inflated information regarding his annual income and available cash/assets.

All in violation of Title 18, United States Code, Section 1014.

## Forfeiture

30. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 29 of this Indictment as if fully set forth herein.

31. Upon conviction for one or more of the offenses alleged in Counts 1 through 5 of this Indictment, the defendant, ANTONIO BROWN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of said violations.

32. Upon conviction for one or more of the offenses alleged in Counts 6 through 7 of this Indictment, the defendant, ANTONIO BROWN, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting or derived from proceeds obtained directly or indirectly as a result of said violations.

33. If, as a result of any act or omission of the defendant, ANTONIO BROWN, any property subject to forfeiture:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third person;

c. Has been placed beyond the jurisdiction of the Court;

d.  Has been substantially diminished in value; or

e.  Has been commingled with other property which cannot be subdivided

without difficulty;

the United States intends, pursuant to Title 18, United States Code, Section

982(b), Title 21, United States Code, Section 853(p), and Title 28, United States

Code, Section 2461(c) to seek forfeiture of any property of said defendant up to

the value of the forfeitable property.


A _____ BILL

_____
FOREPERSON


BYUNG J. PAK
*United States Attorney*

THOMAS J. KREPP
*Assistant United States Attorney*
Georgia Bar No. 346781

JEFFREY W. DAVIS
*Assistant United States Attorney*
Georgia Bar No. 426418


600 U.S. Courthouse ▪ 75 Ted Turner Drive, SW
Atlanta, GA 30303 ▪ 404-581-6000